UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| MICHAEL A. GILMORE, : | Case No. 1:22-cv-417 |
| Petitioner, : | |
| vs. : | Judge Douglas R. Cole |
| : | Magistrate Judge Stephanie K. Bowman |
| WARDEN, LONDON CORR. INST., : | |
| Respondent. : | |

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner proceeding without the assistance of counsel, seeks a writ of habeas corpus under 28 U.S.C. § 2254. The matter is currently before the Court on Respondent's motion to dismiss the action as time-barred (Doc. 8), Petitioner's response to the motion (Doc. 9), and the record of Petitioner's conviction in a Butler County, Ohio court (Doc. 7). Upon consideration, the undersigned United States Magistrate Judge **RECOMMENDS** that the Court **GRANT** the motion to dismiss and **DISMISS** this action with prejudice under 28 U.S.C. § 2244(d).

**I.  Background**

The state criminal case against Petitioner began in 2016. Ohio's Twelfth District Court of Appeals summarized the case as follows:

> On July 6, 2016, appellant was indicted on two counts of aggravated trafficking in drugs, four counts of trafficking in heroin, and one count of trafficking in counterfeit controlled substances. These charges arose from several heroin and fentanyl sales appellant made to a confidential informant in April, May, and June 2016. After the indictment was issued, however, appellant was able to evade arrest until February 2018.

> On May 10, 2018, appellant pled guilty to two of the seven offenses: aggravated trafficking in drugs, a fourth-degree felony in violation of R.C. 2925.03(A)(1), and aggravated trafficking in drugs, a second-degree felony in violation of R.C. 2925.03(A)(1). The State dismissed the remaining five charges. At the hearing, appellant waived a presentence-investigative report. The trial court then proceeded to sentence appellant. The trial court imposed an eight-year mandatory prison term for the second-degree felony and a twelve-month prison term for the fourth-degree felony and ordered the sentences to run consecutively to one another.

(State Court Record, Doc. 7 (hereinafter "SCR"), PageID 96-97). *State v. Gilmore*, 12th Dist. Butler No. CA2018-06-118, 2019-Ohio-1046, ¶¶ 2-3 (Mar. 25, 2019). In the March 25, 2019 Judgment, the Ohio Court of Appeals affirmed Petitioner's conviction and sentence. (SCR, PageID 95).

More than three years later, Petitioner sought further review from the Supreme Court of Ohio. He filed a notice of appeal and a motion for leave to file a delayed appeal on May 13, 2022. (SCR, PageID 103-107). In an Affidavit filed with his motion, Petitioner described the reasons for the delay:

> 3. When the Appellate Court made its Decision I was never notified by [appointed] Counsel of this Decision;
>
> 4. I had no knowledge how long the process takes, and when Covid-19 hit, I really was not sure how long the delay would be;
>
> 5. I have attempted to contact Counsel several times, and she refuses to return my letters or calls from my family;
>
> 6. I received a copy of the Appellate Decision from the prison Law Clerk, that was recovered off of Lexis/Nexis;
>
> 7. It is my desire to continue this appeal, and would have filed this timely had I known the Appellate Court made a decision. The institution Mail Room supervisor can verify the Legal Mail Log, that I have never received any mail from [Counsel];
>
> 8. I submit this Delayed appeal immediately upon discovering the Appeals Court made a Decision back in 2019.

(SCR, PageID 106).

On July 5, 2022, the Supreme Court of Ohio denied the delayed appeal motion and dismissed Petitioner's appeal without an opinion. (SCR, PageID 113). *State v. Gilmore*, 167 Ohio St. 3d 1449, 2022-Ohio-2246, 189 N.E.3d 828 (table). Petitioner did not seek further review from the Supreme Court of the United States. (Petition, Doc. 1, PageID 3).

On July 19, 2022, two weeks after the Supreme Court of Ohio denied his delayed appeal motion, Petitioner submitted his federal habeas corpus petition to this Court. (Petition, Doc. 1, at PageID 18). In the Petition, he raises one Ground for Relief challenging the propriety of his maximum, consecutive sentences. (*Id.*, PageID 5-6). Petitioner provided an Affidavit with his Petition in which he says:

> 2. That my appeal process started around June 2018. I was told that the process would be nearly a year to 18 months. When I realized that I had heard nothing from [counsel], it was in early 2020, and we were on 'lockdown', due to Covid-19 pandemic. I attempted to reach counsel by mail and by phone, without success;
>
> 3. Because this process was never explained to me, by my attorney, I assumed like most people she would notify me of the Court's decision. I assumed things were delayed due to the Covid restrictions of Court. A few months ago I spoke with the prison Law Clerk, who explained Lexis/Nexis, and found my Decision on the computer, and it was dated for 2019. I was immediately provided with a pro se packet, for Delayed Appeal to the Ohio Supreme Court;
>
> 4. On July 5, 2022, the Ohio Supreme Court Denied my Motion for Delayed Appeal. I have been provided this Application for Relief under 28 USC §2254. I have done nothing but follow the instruction by [counsel], and waited. It should be noted that the same counsel is now working as Assistant County Prosecutor for Hamilton County, in Ohio. She alone failed to notify me of the Appellate Court's decision in 2019, as it was submitted to counsel of record;
>
> 5. I spent months attempting to reach [counsel], to now find out that my Decision was made over 2 years earlier.

(Doc. 1, PageID 15).

Respondent filed a motion to dismiss the Petition as time-barred. (Doc. 8). Petitioner filed a response. (Doc. 9). Respondent did not file a reply.

## II.  Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which became effective on April 24, 1996, imposes a one-year statute of limitations on the filing of habeas corpus petitions in federal court. 28 U.S.C. § 2244(d). "Generally, the one-year statute of limitations for habeas petitions filed by state prisoners begins to run on 'the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.'" *Hill v. Bauman*, No. 20-1091, 2020 WL 4346669, at *2 (6th Cir. May 21, 2020) (quoting 28 U.S.C. § 2244(d)(1)(A)). The statute lists alternative dates on which the statute might begin to run in certain cases, but Petitioner does not argue, and the record does not support a finding, that these alternatives apply here.[1]

Petitioner's conviction and sentence in this case "became final by . . . the expiration of the time for seeking" direct review in the Supreme Court of Ohio. 28 U.S.C. § 2244(d)(1)(A); *see Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 460 (6th Cir. 2012) (citing *Gonzalez v. Thaler*, 132 S. Ct. 641, 645 (2012)) ("Because [petitioner] failed to pursue direct review all the way to the [United States] Supreme Court, his judgment became final at the expiration of the time for pursuing direct review in state court."). Here, Petitioner had forty-five days from the date that the Ohio Court of Appeals finished his appeal to seek review in the Supreme Court of

---

[1] Specifically, there is no argument or indication in the record that an "impediment to filing an application created by State action in violation of the Constitution or laws of the United States [was] removed," § 2244(d)(1)(B); that an applicable "constitutional right . . . was . . . newly recognized by the Supreme Court and made retroactive[]," § 2244(d)(1)(C); or that the "factual predicate of the claim . . . presented"—here, that Petitioner received consecutive sentences—was discovered later, § 2244(d)(1)(D). Accordingly, the statute began to run as described in § 2244(d)(1)(A): on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."

4

Ohio. *See* Ohio S.Ct.Prac.R. 7.01(A)(1)(a)(i) (setting out deadline).[2] That is, he had forty-five days from March 25, 2019 (SAC, PageID 95) to file a timely notice of appeal in the Supreme Court of Ohio—he must have filed by May 9, 2019. When he did not, his "time for pursuing direct review in state court" expired. 28 U.S.C. § 2244(d)(1)(A)).

The one-year statute of limitation for AEDPA purposes began to run the next business day (May 10, 2019). Petitioner had one year, or until May 11, 2020,[3] to submit a timely habeas corpus petition. 28 U.S.C. § 2244(d)(1). He did not do so. Instead, he submitted his Petition more than two years later, on July 19, 2022.[4] (Doc. 1, PageID 18). The Petition is therefore untimely.

## **Equitable Tolling**

Petitioner does not argue that his Petition was filed on time, or that the statute of limitations began running on a different date, or that proper collateral challenges in state court tolled the statute.[5] (*See* Petition, Doc. 1, PageID 14-16; Response to Motion to Dismiss, Doc. 9).

---

[2] "To perfect a jurisdictional appeal from a court of appeals to the Supreme Court [of Ohio] as defined by S.Ct.Prac.R. 5.02(A), the appellant shall file a notice of appeal in the Supreme Court [of Ohio] within forty-five days from the entry of the judgment being appealed." Ohio S.Ct.Prac.R. 7.01(A)(1)(a)(i).

[3] The last day of the one-year statute was Saturday, May 9, 2020. Under Fed. R. Civ. P. 6(a)(1)(C), "if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Here, Monday, May 11, 2020.

[4] Absent any evidence to the contrary, the Court will use the date that Petitioner signed the Petition and deposited it for mailing to the Court as the date of "filing." *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (citing among other things *Houston v. Lack*, 487 U.S. 266 (1988)) (discussing the "prison mailbox rule").

[5] Section 2244(d)(2) provides that the statute of limitations is tolled during "[t]he time during which a properly filed application for State postconviction or other collateral review with respect to the pertinent judgment or claim is pending." The record reflects that no such applications were filed in Petitioner's trial or appellate cases. (*See* Petition, Doc. 1, PageID 3 (Petitioner states he filed no other challenges to his conviction); SCR, PageID 122 (trial court case) and PageID 127 (Court of Appeals case)). The online dockets of these cases confirm this. Available by case number search (CR 2016 06 0901 and CA 2018 06 0118) at https://clerkservices.bcohio.gov/eservices/home.page (accessed July 25, 2023).

Petitioner's delayed appeal motion in the Supreme Court of Ohio in 2022 would not toll the statute under § 2244(d)(2) because the statute had already expired when the motion was filed. *See Vroman v. Brigano*, 346 F.3d

He also does not argue that he is actually innocent of the charges to which he pled guilty.[6] (*Id*.). Instead, Petitioner asserts that the "extraordinary circumstances exception" described in *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), applies. (Doc. 9). *Pace* concerned "equitable tolling" of the statute of limitations. *Id*. at 418-19.

The Supreme Court of the United States has said that the statute of limitations for habeas corpus actions is subject to equitable tolling in appropriate cases. *Holland v. Florida*, 560 U.S. 631, 645 (2010). "Equitable tolling allows courts to review time-barred habeas petitions 'provided that a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 462 (6th Cir. 2012) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)). The doctrine "is used sparingly by federal courts." *Robertson*, 624 F.3d at 784 (citing *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000)).

A petitioner is "entitled to equitable tolling" only if he shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Menominee Indian Tribe of Wisconsin v. United States*, 577 U.S. 250, 255 (2016) (quoting *Holland*, 560 U.S. at 649). "[T]he second prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond [his] control." *Id*. at 257.

---

598, 602 (6th Cir. 2003) ("The tolling provision does not, however, revive the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run.") (internal quotation and citation omitted).

[6] A credible showing of actual innocence, based on new, reliable evidence that was not presented at trial, might permit the Court to review an untimely petition. *See generally McQuiggin v. Perkins*, 569 U.S. 383, 387 (2013). This exception is not invoked or relevant here. *See id*. at 394 ("AEDPA's time limitations apply to the typical case in which no allegation of actual innocence is made.")

"The petitioner bears the burden of demonstrating that he [or she] is entitled to equitable tolling." *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004) (quoting *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003)). In this respect, the United States Court of Appeals for the Sixth Circuit has held that a petitioner's pro se status, limited law-library access, or lack of access to the transcript do not warrant equitable tolling. *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 751 (6th Cir. 2011). Likewise, ignorance of the law, illiteracy, and lack of legal assistance do not amount to grounds for equitable tolling. *Allen,* 366 F.3d at 403 ("[I]gnorance of the law alone is not sufficient to warrant equitable tolling."); *Cobas v. Burgess,* 306 F.3d 441, 444 (6th Cir. 2002) ("an inmate's lack of legal training, his poor education, or even his illiteracy does not give a court reason to toll the statute of limitations") (internal citations omitted). And, "[t]he Supreme Court has long held that 'the principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect' that causes [a filer] to miss a deadline." *Robertson,* 624 F.3d at 784 (quoting *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96 (1990)). However, "both ineffective assistance of counsel and a substantial, involuntary delay in learning about the status of their appeals may constitute extraordinary circumstances sufficient to warrant relief." *Keeling*, 673 F.3d at 462 (quoting *Robinson v. Easterling,* 424 F. App'x 439, 442 (6th Cir. 2011) (cleaned up). "Despite the presence of such circumstances, the statute of limitations will only be tolled if the circumstances were both beyond the control of the litigant and unavoidable with reasonable diligence." *Keeling*, 673 F.3d at 462.

In this case, Petitioner argues that appointed appellate counsel failed to provide him a copy of the March 25, 2019 decision that he could have appealed to the Supreme Court of Ohio. (Doc. 1, PageID 15; Doc. 9, PageID 143-144). He did not seek out this decision himself until January 2022. (Doc. 9, PageID 144). He says he relied on counsel's statement that his appeal

7

would take a year to eighteen months (from its June 2018 inception) to resolve, and that he assumed the process was delayed because of COVID-19 when he did not hear from counsel after the expected amount of time had elapsed. (Doc. 1, PageID 15). In early 2020, Petitioner reached out to counsel by mail and phone, but did not reach her. (*Id*.; *see also* Doc. 9, PageID 143-144). In January 2022, he sought assistance in his prison's law library and from the county clerk. (Doc. 9, PageID 144). Petitioner argues that once he received the March 25, 2019 decision, he took prompt action to seek further appellate review. (*Id*.).

> The decision in *Keeling* is instructive here. In that case,
>
> Keeling did not file a timely appeal of the Court of Appeals's decision to the Ohio Supreme Court. However, on March 6, 2008, almost six years after the Court of Appeals decision, Keeling filed a pro se motion for leave to file a delayed appeal with the Ohio Supreme Court. In support of his motion, Keeling asserted that his appellate counsel failed to provide him with notice of the Court of Appeals's decision and "by the time I had discovered that a decision had been made, it was well past the 45 day period for filing the notice of appeal." The Ohio Supreme Court denied the motion and dismissed without opinion.

*Keeling*, 673 F.3d at 455. When Keeling filed a federal habeas corpus petition,

> the Warden filed a motion to dismiss arguing that because [AEDPA] governed Keeling's petition, the one-year statute of limitations set forth in 28 U.S.C. § 2244(d) barred federal court review. Keeling, still proceeding pro se, opposed the motion, arguing that equitable tolling should apply to his petition due to the ineffective assistance of his appellate counsel. Keeling alleged that after he filed his timely direct appeal to the Ohio Court of Appeals, his appointed appellate counsel informed him that it would take "several years for the appeal and that [Keeling] should just be patient." Keeling asserted that he waited several years without hearing from his counsel and then grew concerned when counsel would not take his calls in the early part of February 2008. Keeling alleges that he then wrote to the Hamilton County court clerk in order "to see if he could obtain a copy of the decision (because its attachment is a prerequisite to filing a delayed appeal to the Supreme Court)," that he received a copy of the decision on February 12, 2008, and that he then immediately began preparing for his delayed appeal.

*Id*. at 456-57. Keeling had argued that he was entitled to equitable tolling because he had diligently pursued his rights. *Id.* at 462. He asserted that the delay in filing "is attributable to the

8

alleged failure of his appellate counsel to inform him of the Court of Appeals's decision," and that "the failure of his appellate counsel to inform him about the result of his appeal constituted an extraordinary circumstance that prevented him from bringing his petition in a timely manner." *Id*.

The Sixth Circuit concluded that Keeling had not established extraordinary circumstances or that he was reasonably diligent. Although some facts in that case were different, the Court said:

> "While this Court has recognized that attorney assurances and the realities of incarceration may justifiably delay a petitioner's request for a case status update, ... this Court has never granted equitable tolling to a petitioner who sat on his rights for a year and a half." *Robinson,* 424 Fed.Appx. at 443. In *Robinson,* the petitioner requested case updates from his attorney, who failed to provide them, and the petitioner waited eighteen months between his last two update requests. *Id.* at 440- 41, 443. This court found that the petitioner failed to exercise the required diligence in pursuing his rights and affirmed the district court decision declining to equitably toll the statute of limitations, even though the petitioner's attorney failed to inform him of the appellate decision for more than one year after it issued. *Id.* at 440-43. Further, we have declined to allow equitable tolling where a petitioner's attorney misled him into believing that his appeal was still pending before the state court because the petitioner failed to diligently monitor the progress of his appeal. *Winkfield v. Bagley,* 66 Fed.Appx. 578, 583-84 (6th Cir.2003). Similarly, this court has declined to equitably toll the statute of limitations where a petitioner alleged that the state court and his attorney failed to inform him that a decision had been rendered affirming his conviction. *Elliott v. Dewitt,* 10 Fed.Appx. 311, 312-13 (6th Cir.2001).
>
> Here, Keeling's delay exceeds that which has previously been found excessive and inappropriate for the application of equitable tolling. *See Robinson,* 424 Fed.Appx. at 443. Keeling did not diligently monitor the status of his appeal. *See Winkfield,* 66 Fed.Appx. at 583-84; *Elliott,* 10 Fed.Appx. at 313.

*Keeling*, 673 F.3d at 463-64. The same analysis applies to Petitioner's arguments here about his appointed counsel and failure to monitor his appeal, as discussed below.

9

In recent years, courts have also considered how issues related to the COVID-19 pandemic fit within the equitable tolling analysis. One court recently summarized the issue, in the context of a § 2255 motion seeking habeas corpus relief:

> Courts have concluded that the COVID-19 pandemic "could—in certain circumstances—conceivably warrant equitable tolling" for § 2255 motions. *United States v. Haro*, No. 8:18-cr-66, 2020 WL 5653520, at *4 (D. Neb. Sept. 23, 2020). These "certain circumstances" involve defendants who had been pursuing their rights diligently and would have timely filed if not for external obstacles caused by COVID-19. For example, the District of Nevada granted a defendant's COVID-19-based request for equitable tolling because the pandemic had, among other things, halted ongoing investigations and prevented counsel from obtaining necessary court records. *See Dunn v. Baca*, No. 3:19-cv-702, 2020 WL 2525772, at *2 (D. Nev. May 18, 2020). In granting relief, the court wrote that it had "little to no doubt that [the defendant and his counsel were] pursuing [the defendant's] rights diligently." *Id.*; *see, e.g., Fitzgerald v. Shinn*, No. 19-cv-5219, 2020 WL 3414700, at *2 (D. Ariz. June 22, 2020) (Petitioner was entitled to equitable tolling where he demonstrated, through declarations from members of defense team, his efforts to investigate and pursue his rights under § 2255).
>
> In other circumstances, courts have rejected requests for equitable tolling premised upon pandemic-related lockdowns and loss of law library access where there was no evidence the prisoner diligently pursued his right to file a § 2255 motion prior to the lockdown. *See Mims v. United States*, No. 4:20-cv-1538, 2021 WL 409954, at *3 (E.D. Mo. Feb. 5, 2021) (a claim of inability to access a law library due to a COVID-19 lockdown was insufficient to warrant application of equitable tolling where the movant failed to establish he was pursuing his rights diligently beforehand); *United States v. Thomas*, No. 18-cr-135, 2020 WL 7229705, at *2–3 (E.D. La. Dec. 8, 2020) (similar); *United States v. Barnes*, No. 18-cr-154, 2020 WL 4550389, at *2 (N.D. Okla. Aug. 6, 2020) ("Even assuming that a lockdown due to the COVID-19 pandemic delayed defendant's ability to file his motion, it does not explain the more than one-year delay. COVID-19 measures have been in effect since March 2020, and defendant could have filed his motion long before March 2020.").
>
> **"The bottom line is that the COVID-19 pandemic does not automatically warrant equitable tolling for a petitioner who seeks it on that basis**. The petitioner must establish that he was pursuing his rights diligently *and* that the COVID-19 pandemic specifically prevented him from filing his motion." *United States v. Henry*, No. 2:17-cr-180, 2020 WL 7332657, at *4 (W.D. Pa. Dec. 14, 2020) (emphasis in original) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005)).
>
> Here, West simply asserts that the pandemic has resulted in a lockdown that has "hindered or prevented [West's] access to the institution's law library and relevant

legal materials needed to properly prepare and file an informed 28 U.S.C. § 2255 motion." (Doc. No. 47 at 1.) "Courts have consistently held that general allegations of placement in segregation and lack of access to legal materials are not exceptional circumstances warranting equitable tolling, especially where a petitioner does not sufficiently explain why the circumstances he describes prevented him from timely filing a habeas petition[.]" *Andrews v. United States*, No. 17-1693, 2017 WL 6376401, at *2 (6th Cir. Dec. 12, 2017). West's vague and generalized contentions do not begin to demonstrate that the impact of the COVID-19 pandemic interfered with his ability to file a timely § 2255 motion. *See, e.g., Chapman-Sexton v. United States*, No. 2:16-cr-141, 2021 WL 292027, at *3 (S.D. Ohio Jan. 28, 2021) ("The record does not indicate that impact of any extraordinary circumstances imposed by COVID-19 prevented Petitioner from timely filing this federal habeas corpus petition within the one-year period[.]").

*United States v. West*, 578 F. Supp. 3d 962, 966-67 (N.D. Ohio 2022) (emphasis added).

Similarly, this Court has found vague invocations of the COVID-19 pandemic as an extraordinary circumstance unpersuasive:

To the extent that Petitioner argues the COVID-19 pandemic by itself warrants tolling the statute of limitations, that argument is unpersuasive. True, as the R&R explained, the "COVID-19 pandemic may qualify as an extraordinary circumstance justifying equitable tolling of the statute of limitations." *Hager v. Warden, Ross Corr. Inst.*, No. 2:21-CV-2472, 2021 WL 2291319, at *3 (S.D. Ohio June 4, 2021), *report and recommendation adopted*, No. 2:21-CV-2472, 2021 WL 2670622 (S.D. Ohio June 29, 2021) (citation omitted). However, even assuming that the pandemic was an extraordinary circumstance warranting tolling the statute of limitations as to Petitioner—a somewhat dubious assumption, as explained at length in the R&R—he could not rely on the pandemic to toll the statute of limitations. Petitioner had five months of his limitations period prior to the pandemic that were unaffected by COVID-19, and he has not shown that he diligently pursued his claims during that time. R&R, ECF No. 16. In other words, Petitioner does not demonstrate that he diligently pursued his claims from the time his judgment became final (October 21, 2019) to the start of pandemic-related restrictions in approximately March 2020. As another court of appeals has explained, **if a petitioner does not explain his lack of diligence during the months *before* the pandemic-related restrictions went into place, equitable tolling is inappropriate**. *See Donald v. Pruitt*, 853 F. App'x 230, 234 (10th Cir. 2021) ("[The petitioner] has not explained why he was not diligent for the nine months before COVID restrictions were implemented. Therefore, [he] hasn't made the requisite showing that he is due an exception to the statutory bar."). So, because Petitioner does not demonstrate that he diligently pursued his claims before the start of the COVID-19 pandemic restrictions, the pandemic does not excuse his untimeliness.

11

*Camelin v. Warden, Southeastern Corr. Inst.*, No. 2:21-cv-4070, 2022 WL 1442009, at *3 (S.D. Ohio May 6, 2022) (emphasis added).

The Undersigned concludes here that Petitioner has not demonstrated he is entitled to equitable tolling. First, Petitioner has not shown reasonable diligence in pursuing his rights, as in *Keeling*. The record does not reflect that he took any action at all to monitor his appeal from June 2018 (when it was filed) until "early 2020," when he "realized" he had not heard how it was decided. (Doc. 1, PageID 15). By that time, he could not reach counsel, who he suggests may have been working as a county prosecutor at the time.[7] (*Id.*). But it was a further two years after this realization until Petitioner tried to access information about the appeal himself by way of the institutional law library and county clerk. (*Id.*; Doc. 9, PageID 144). He was immediately successful. (*See* Doc. 1, PageID 15 ("A few months ago I spoke with the prison Law Clerk, who explained Lexis/Nexis, and found my Decision on the computer"); *cf.* Doc. 9, PageID 14 ("He then sought assistance in the Institutional Law Library in January of 2022. Petitioner contacted the Clerk of Court, and discovered [the decision] . . . With the assistance of the Law Library, Petitioner was able to download a copy")). Petitioner then began the process of preparing a motion for delayed appeal to the Supreme Court of Ohio, which was filed a few months later in May 2022. (Doc. 1, PageID 15; Doc. 9, PageID 144). But Petitioner does not sufficiently explain why he did not take these step earlier, instead waiting through two years of silence from counsel and until three and one-half years after his appeal was filed to check on it and access the decision that was apparently readily available.

---

[7] The Supreme Court of Ohio's attorney directory does not reflect that Petitioner's appointed appellate counsel, Michele Temmel, works for the Hamilton County Prosecutor's Office. *See* https://www.supremecourt.ohio.gov/ AttorneySearch/#/77606/attyinfo (accessed July 25, 2023). Cases filed in state court show Temmel as defense counsel of record as late as September 2022, after Petitioner filed his affidavit. *See, e.g., State v. Powell*, 12th Butler No. CA2022-04-037, 2022-Ohio-3274, 2022 WL 4295311 (Sept. 19, 2022) (representing the defendant-appellant).

Petitioner says, without much elaboration, that he "attempted to reach counsel by mail and by phone, without success" from "early 2020." (Doc. 1, PageID 15; *see also* Doc. 9, PageID 143-144). But it was not until January 2022 that he took steps himself to seek information about his appeal. (Doc. 9, PageID 144). This delay is not explained except by a vague reference to a "lockdown" due to COVID-19. (Doc. 1, PageID 15; Doc. 9, PageID 143).

Petitioner has not convinced the Undersigned that the lockdown—which is not further explained in his submissions—represents an extraordinary circumstance that stood in his way and prevented him from filing his Petition in a timely manner. Petitioner does not explain anything about the lockdown at his institution or how it impacted his ability to make phone calls, for example, or to write letters to the county clerk, or to look up his case online with the assistance of the institutional law clerk. The Undersigned appreciates that many restrictions did occur in Ohio's prisons during the height of the pandemic, but Petitioner has not carried his burden to show how and when these restrictions *affected him* at his institution and his ability to diligently monitor and litigate his case.

Moreover, Petitioner does not explain how he was prevented from acting in the months *before* "the start of pandemic-related restrictions in approximately March 2020." *See Camelin,* 2022 WL 1442009, at *3 (citing *Donald*, 853 F. App'x at 234) ("Petitioner does not demonstrate that he diligently pursued his claims from the time his judgment became final . . . to the start of pandemic-related restrictions in approximately March 2020. As another court of appeals has explained, if a petitioner does not explain his lack of diligence during the months *before* the pandemic-related restrictions went into place, equitable tolling is inappropriate."). Nearly a full year passed between the Court of Appeals' decision (on March 25, 2019) and the pandemic restrictions (in approximately March 2020). Petitioner's statute was running for approximately

13

ten months prior to the restrictions. He has not shown that he acted with reasonable diligence during those months.

Accordingly, having considered the record and all the parties' filings in this case, the Undersigned concludes that the Petition is untimely and time-barred, and that equitable tolling does not apply to allow this Court to review it. The Undersigned therefore **RECOMMENDS** that the Court **GRANT** Respondent's motion to dismiss as time-barred (Doc. 8) and **DISMISS** the Petition with prejudice.

### III.     Certificate of Appealability

A state prisoner seeking federal habeas corpus relief is not automatically entitled to appeal a district court's decision denying relief unless the district court issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c). A district court should issue or deny a COA "when it enters a final order adverse to the applicant." Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts.

To be entitled to a COA, a petitioner must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). The Sixth Circuit has also cautioned that "a court should not grant a certificate without some substantial reason to think that the denial of relief might be incorrect." *Moody v. United States*, 958 F.3d 485, 488 (6th Cir. 2020).

"When a district court denies a claim on procedural grounds, the court may issue a COA only if the applicant shows 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it

debatable whether the district court was correct in its procedural ruling.'" *Hill v. Bauman*, No. 20-1091, 2020 WL 4346669, at *1 (6th Cir. May 21, 2020) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate whether the Petition is untimely. Reasonable jurists would also not debate whether equitable tolling applies, given Petitioner's acknowledged and substantial delay in taking action on his own behalf to determine the status of his state court proceedings and seek further review. The Undersigned **RECOMMENDS** that the Court **DENY** a certificate of appealability.

### IV. Conclusion

The Undersigned **RECOMMENDS** that the Court **GRANT** Respondent's motion to dismiss this habeas corpus matter as time-barred (Doc. 8) and **DISMISS** this action with prejudice. The Undersigned further **RECOMMENDS** that this Court **DENY** a certificate of appealability.

### V. Notice Regarding Objections to this Report and Recommendation

If any party objects to this Report and Recommendation ("R&R"), the party may serve and file specific, written objections to it **within fourteen days** after being served with a copy thereof. Fed. R. Civ. P. 72(b); Rule 12 of the Rules Governing Section 2254 Cases in the United States District Court. All objections shall specify the portion(s) of the R&R objected to and shall be accompanied by a memorandum of law in support of the objections. The Court may extend the fourteen-day objections period if a timely motion for an extension of time is filed.

A Judge of this Court will make a de novo determination of those portions of the R&R to which objection is made. Upon proper objection, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further

evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R de novo, and will also operate as a waiver of the right to appeal the decision of the District Court adopting the R&R. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

August 8, 2023  *s/Stephanie K. Bowman*
STEPHANIE K. BOWMAN
UNITED STATES MAGISTRATE JUDGE